Wilcox v. Beitel.

---

HENRY WILCOX v. JULIUS H. BEITEL.

FILED JANUARY 15, 1895.   No. 5225.

| 43 | 457 |
| 59 | 209 |

| 43 | 457 |
| 61 | 366 |

1. **Replevin:** EVIDENCE. Evidence in the case examined, and *held* to sustain the judgment of the trial court.

2. ———: DEMAND. Where a defendant in replevin did not come into possession of the property rightfully, or when he contests the case on the trial on an affirmative claim of right to the possession of the property, it is not necessary for the plaintiff to make proof of demand and refusal, in order to recover costs.

ERROR from the district court of Kearney county. Tried below before GASLIN, J.

*C. C. Flansburg,* for plaintiff in error, cited: *Goodman v. Kennedy,* 10 Neb., 270; *Bardwell v. Stubbert,* 17 Neb., 488; *Burlington & M. R. R. Co. v. Bear,* 18 Neb., 494; *Pence v. Arbuckle,* 22 Minn., 417; *Hawkins v. Methodist*

*Episcopal Church,* 23 Minn., 256; *Califf v. Hillhouse,* 3
Minn., 217; *Gregg v. Wells,* 10 Ad. & E. [Eng.], 90;
*Peters v. Parsons,* 18 Neb., 194.

*Sheppard & Black, contra,* cited: Maxwell, Justice Prac-
tice [5th ed.], 704; Wells, Replevin, secs., 348, 374.

NORVAL, C. J.

This was a suit in replevin brought by Julius H. Beitel
against Henry Wilcox, to recover possession of one grey
mare, one grey horse, one lumber wagon, and a set of
double harness.   The petition contains the usual averments
found in a petition in replevin, and the answer is a general
denial.   A jury was waived, and the cause submitted to
the court upon the pleadings and evidence, upon consider-
ation whereof the court found the right of property and
right of possession thereof, at the commencement of the
action, to be in the plaintiff, and assessed his damages at
one cent for the wrongful detention.

The first assignment of error is that the finding is against
the weight of the evidence.   There is but little dispute
upon the facts.   The record discloses that the mare and
the horse in controversy were raised in Illinois by J. T.
Beitel, the father of Julius H. Beitel, the plaintiff below,
and who was the owner of them, and of the wagon as well,
until the fall of the year 1886, when the team and wagon
were delivered, in Illinois, to Eugene F. Beitel, a brother
of the said Julius H., who brought the same to Nebraska.
After their arrival in this state, Julius H. Beitel leased to
his brother Eugene a farm in Franklin county, and the lat-
ter took the team to said farm, where he used the same in
carrying on the business of agriculture until during the
month of February, 1890, when Eugene absconded and
left the state, leaving the property upon his brother's farm.
On the first day of February, 1889, the said Eugene Bei-
tel procured a loan of the Bank of Wilcox, in the sum of

$70, through its cashier, Henry Wilcox, and to secure the payment thereof executed and delivered a chattel mortgage upon said team, wagon, a set of double harness, and five cows. Subsequently, on the 6th day of April, 1889, said bank made said Eugene a loan of $84, and to secure its payment a mortgage was taken upon the same team of horses and two cows. Shortly after Eugene absconded, the defendant in error took possession of the team, wagon, and harness, and they remained in his possession until October, 1890, when they were taken from him by the plaintiff in error under said chattel mortgage. Thereupon the defendant in error brought this action. Julius H. Beitel claims to be the owner of the property replevied and by reason thereof is entitled to its possession. As to the harness, the testimony is clear that they belong to defendant in error, he having purchased them from a Mr. Blake, of Bloomington, Nebraska, in the fall of 1888, and sent the same out to the farm occupied by his brother Eugene, to be used by him.

It is insisted by counsel for plaintiff in error that the proof falls far short of showing that Julius H. Beitel owned the team and wagon, or that they were ever in his possession until shortly prior to the bringing of this suit. Either counsel is in error in his contention, or we have failed to comprehend the testimony in the bill of exceptions. J. H. Beitel, the plaintiff below, testified, in answer to questions, as follows:

Q. State if you are the owner of the gray horse, eleven years old, weighing 1,300 pounds, one gray mare, twelve years old, weighing 1,300 pounds, and the wagon and harness, the subject of this action.

A. Yes, sir.

Q. Whom did you get them of?

A. The property was sold me by my father in the fall of 1886.

Q. Where have they been kept since that time?

A. On my farm in section 32, town 4, range 16, Franklin county, Nebraska.

Q. When were they taken on the place, and how long did you keep them?

A. They were taken to that same place the same fall I got them, 1886. They remained until early in the spring, or late in the winter of 1890.

Q. Then where were they taken?

A. They were taken to my brother's, A. C. Beitel, for a short time, until it became convenient for him to convey them to me at Franklin, Nebraska. They were then in my possession until the first of October, 1890, or thereabout.

Q. You have owned those horses ever since you got them from your father in 1886?

A. Yes, sir.

Cross-examination:

Q. Where were the horses when you got them of your father?

A. In Illinois.

Q. How did you get them out here?

A. My father sent them out.

Q. How did he send them?

A. By rail.

Q. Who came with them?

A. My brother Eugene.

Q. He is the man who made the mortgage to Mr. Wilcox?

A. Yes, sir.

Q. When did he get here?

A. In the fall of 1886.

Q. He brought these horses out here?

A. He came with them.

Q. Then where did he go?

A. He went out pretty soon after that onto my farm.

Q. When did he take possession of the farm?

A. The same fall he moved onto it.

Q. Were these horses in his possession at the time he moved on there?

A. Yes, sir, I suppose so.

Q. How long before he left there?

A. He left late in the winter of 1889–90, I think it was in February, 1890.

Q. He had continued to reside on this land of yours during that time?

A. Yes, sir.

Q. His family was there?

A. Yes, sir.

Q. He used these horses farming there?

A. Yes, sir.

Q. And used the wagon?

A. Yes, sir.

Q. And the harness?

A. Yes, a part of the time.

Q. When did you first learn of this mortgage being upon the property?

A. I think about the middle of June, 1890.

It further appears from the testimony of the same witness that the team and wagon were given to him by his father as an advancement, and that in October, 1886, his father sent him in a letter the following written statement of the property so advanced to him:

HINCHLEY, Oct. 5, 1886.

J. H. BEITEL, Dr.

To T. J. BEITEL.

| | | |
|---|---|---|
| 1886, Sept. 7, To 1 gray mare...................... | $100 | 00 |
| To 1 gray horse...................... | 100 | 00 |
| To 1 lumber wagon.................... | 55 | 00 |
| To 1 4 section harrow................. | 16 | 00 |
| To ½ share corn planter............. | 10 | 00 |
| To ½ share Deering binder......... | 25 | 00 |
| | $306 | 00 |

The testimony of the plaintiff below stands wholly un-contradicted, and the record further discloses that the mare was bred in 1888 by Eugene for the plaintiff, and the lat-ter obligated himself for the payment of the services of the horse; that Eugene represented to Mr. Wilcox that he was the owner of the property, but to others he claimed that it belonged to his brother Julius. Upon a considera-tion of the whole testimony we do not perceive how the trial court could have reached a different conclusion. There is absolutely no proof to be found in the bill of exceptions that any portion of the mortgaged property belonged to Eugene, excepting that he represented to Mr. Wilcox he owned the team, and that he kept and used the same while farming his brother's land. We do not think this had the effect of transferring the title from Julius to Eugene.

The principle of estoppel cannot be invoked in this case. There is not a scintilla of testimony to show that Julius H. Beitel was aware that his brother ever claimed to own the property in controversy, or to treat it as his own, prior to the making of the mortgages, or knew of their existence until some time after they were executed; nor does it ap-pear that the bank was induced to alter or change its posi-tion, or was in any manner prejudiced by reason of the silence of defendant in error after he learned that the prop-erty had been mortgaged by his brother. It is not shown that the bank would have been able to have collected its debt had it been immediately notified by Julius H. Beitel of the facts regarding the ownership of the property. Had the defendant in error knowingly permitted his brother to treat the property as his own, he would thereby be ex-cluded from claiming the same; but such element is en-tirely wanting in this case. True, Eugene had possession of the property for a long time, but there was nothing re-markable in that, as it frequently happens that a landlord furnishes his tenant with teams for the purpose of farming. If the rule for which plaintiff in error contends should be

adopted, it would be unsafe for one to allow another to use his property, since the latter might mortgage it and thereby defeat the rights of the owner therein.

It is finally argued that the court erred in rendering judgment for costs against the plaintiff in error, since no demand was made for the property prior to the bringing of the action, and in support of the contention *Peters v. Parsons,* 18 Neb., 194, is cited in the brief of counsel. In that case it was held that the defendant will not be liable. for costs in an action of replevin when he is rightfully in possession of the property, unless the plaintiff demands possession thereof prior to the bringing of the suit. That case is not analogous to the one at bar, inasmuch as the defendant below did not come rightfully into the possession of the property. He had taken it from the plaintiff against his protest, without right or authority; besides, the defendant contested the case on the trial on a claim of superior right to the property by virtue of the chattel mortgages. It was not necessary, therefore, that the plaintiff should have made a demand for the property in order to entitle him to recover costs. (*Ogden v. Warren,* 36 Neb., 715; *Rodgers v. Graham,* 36 Neb., 730.)

JUDGMENT AFFIRMED.